

**U.S. Department of Justice**

***Carmen M. Ortiz***
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 27, 2015

BY E-MAIL TO: Stellio_Sinnis@fd.org

Stylianus Sinnis
Assistant Federal Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210

Re: *United States v. Ronald S. Brown*
Criminal No. 14-30027-MGM

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Ronald S. Brown ("Defendant"), agree as follows with respect to the above-referenced case:

1. Change of Plea

At the earliest practicable date, Defendant shall plead guilty to the following counts of the above-referenced Indictment:

a. Count Seven: Interstate Travel For The Purpose Of Engaging In Illicit Sexual Conduct With A Minor, in violation of 18 U.S.C. § 2423(b); and

b. Count Nine: Possession Of Material Involving The Sexual Exploitation Of Minors, in violation of 18 U.S.C. § 2252(a)(4)(B).

Defendant expressly and unequivocally admits that he committed the crimes charged in Counts Seven and Nine of the Indictment, did so knowingly and intentionally, and is in fact guilty of those offenses.

The U.S. Attorney agrees to dismiss Counts One through Six and Count Eight of the Indictment following the imposition of sentence at the sentencing hearing.

Defendant agrees to the accuracy of the attached statement of facts.

2. Penalties

Defendant faces the following mandatory minimum and maximum penalties on each count of the Indictment:

a. Count Seven (18 U.S.C. §§ 2423(b) and 2260A): pursuant to 18 U.S.C. § 2423(b), incarceration for a maximum of thirty years and pursuant to 18 U.S.C. § 2260A, incarceration for an additional mandatory and consecutive term of ten years; supervised release for a mandatory minimum of five years and a maximum of life; a fine of $250,000, or twice the gross gain/loss, whichever is greater; a mandatory special assessment of $100; and forfeiture to the extent charged in the Indictment.

b. Count Nine (18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2)): incarceration for a mandatory minimum of ten years and a maximum of twenty years; supervised release for mandatory minimum of five years and a maximum of life years; a fine of $250,000, or twice the gross gain/loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

Defendant also recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which Defendant is pleading guilty. Indeed, because Defendant is pleading guilty to Count Seven (18 U.S.C. § 2423(b)) and Count Nine (18 U.S.C. § 2252(a)(4)(B)), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including defense counsel and the District Court, can predict to a certainty the effect of this conviction on Defendant's immigration status. Defendant nevertheless affirms his decision to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is Defendant's automatic removal from the United States.

Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act, and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. §2250.

3. Fed. R. Crim. P. 11(c)(1)(C) Plea

This Plea Agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(C), and Defendant's guilty plea will be tendered pursuant to that provision. In accordance with Rule 11(c)(1)(C), if the District Court ("Court") accepts this Plea Agreement, the Court must include the agreed

disposition in the judgment. If the Court rejects any aspect of this Plea Agreement, the U.S. Attorney may deem the Plea Agreement null and void. Defendant understands and acknowledges that he may not withdraw his plea of guilty unless the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5).

4. Sentencing Guidelines

The parties agree jointly to take the following positions at sentencing under the United States Sentencing Guidelines ("USSG" or "Guidelines"). The parties agree that Defendant's total adjusted offense level under the Guidelines is calculated as follows:

- in accordance with USSG § 2G1.3(a)(4), Defendant's base offense level for Count Seven is 24, because Defendant was convicted of an offense other than 18 U.S.C. §§ 1591(b)(1), 1591(b)(2), 2422(b), or 2423(a);

- in accordance with USSG § 2G1.3(b)(3)(A), Defendant's offense level for Count Seven is increased by 2, because Defendant's offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct;

- in accordance with USSG § 2G1.3(b)(4)(A), Defendant's offense level for Count Seven is increased by 2, because Defendant's offense involved the commission of a sex act or sexual contact; and

- in accordance with USSG § 2G2.2(a)(1), Defendant's base offense level for Count Nine is 18, because Defendant was convicted of 18 U.S.C. § 2252(a)(4);

- in accordance with USSG § 2G2.2(b)(5), Defendant's offense level for Count Nine is increased by 5, because Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor;

- in accordance with USSG § 2G2.2(b)(6), Defendant's offense level for Count Nine is increased by 2, because Defendant's offense involved the use of a computer of interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material;

- in accordance with USSG § 2G2.2(b)(7), Defendant's offense level for Count Nine is increased by 3, because Defendant's offense involved at least 150 but fewer than 300 images;

- in accordance with USSG §§ 3D1.1, 3D1.2, and 3D1.3, Count Seven and Count Nine are grouped together into a single group with an offense level of 28;

- in accordance with USSG § 4B1.5(a)(1)(B)(ii), Defendant's offense level is 34, because Defendant's instant offense of conviction (Count Seven) is a covered sex crime, USSG § 4B1.1(Career Offender) does not apply, and Defendant committed the instant offense of conviction (Count Seven) subsequent to sustaining at least one sex offense conviction, the statutory maximum of the instant offense of conviction (Count Seven) is 25 years or more, and the offense level of 34 is greater than the offense level determined under Chapters Two and Three;

- in accordance with USSG § 3E1.1, based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, the adjusted offense level is reduced by three; and

- in accordance with USSG § 4B1.5(a)(2), Defendant's criminal history category is V.

The U.S. Attorney's agreement that the disposition set forth below is appropriate in this case is based, in part, on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case.

The U.S. Attorney may, at her sole option, be released from her commitments under this Plea Agreement, including, but not limited to, her agreement that Paragraph 5 constitutes the appropriate disposition of this case, if at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit Defendant's conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(d) Fails to provide truthful information about Defendant's financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(f) Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG § 3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Plea Agreement; or

(j) Attempts to withdraw Defendant's guilty plea.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

5. Agreed Disposition

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the U.S. Attorney and Defendant agree that the following is a reasonable and appropriate disposition of this case:

(a) incarceration for 168 to 192 months;

(b) no fine, based upon Defendant's inability to pay a fine;

(c) 120 months of supervised release, including the following special conditions:

1. Defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.

2. Defendant is to pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule.

3. Defendant is to provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office.

4. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, Defendant shall register as a sex offender not later than 3 business days (from release or sentencing, if granted probation). Defendant will keep the registration current, in each jurisdiction where the defendant resides, is employed or is a student. Defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the

defendant is registered and inform that jurisdiction of all changes in the information. Failure to do so may not only be a violation of this condition but also a new federal offense punishable by up to 10 years imprisonment. In addition, the defendant must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender per the Adam Walsh Child Protection And Safety Act of 2006 form.

5. Defendant shall participate in a sexual specific evaluation or sex offender specific treatment, conducted by a sex offender treatment provider, as directed and approved by the Probation Office. The treatment provider shall be trained and experienced in the treatment of sexual deviancy, and follow the guideline practices established by the Association for the Treatment of Sexual Abusers (ATSA). The sexual specific evaluation may include psychological and physiological testing which may include polygraph, ABLE screening, and other types of testing, as approved by the Probation Office. Defendant shall disclose all previous sex offender or mental health evaluations to the treatment provider. Defendant shall also contribute to the costs of the evaluation, according to his/her ability, as determined by the Probation Office. When submitting to a polygraph exam, the defendant does not waive his or her Fifth Amendment rights, and the defendant's exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

6. Defendant is not to possess or use a computer, internet-capable device, or similar electronic device without the prior permission of the Probation Office. Any device previously mentioned should not be used to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. Defendant is prohibited from entering chat rooms, to send or receive "instant messages," or to send or receive email with attached electronic files through any electronic medium unless previously approved by the Probation Office. Defendant shall not utilize any sex-related telephone services, websites, or electronic bulletin boards.

7. Defendant shall allow the installation of a computer and internet monitoring program and/or identify computer systems, internet-capable devices, and similar memory and electronic devices to which the defendant has access (except a computer owned by his employer and not located in his residence). The program(s) used will be designed to identify, for the probation office, the viewing, downloading, uploading,

transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. Defendant shall contribute to the cost of such monitoring services, based on the defendant's ability to pay, as deemed appropriate by the Probation Office. Defendant shall not attempt to remove or otherwise defeat such systems, and shall allow the Probation Office to examine such computer and receive data from it at any reasonable time.

8. Defendant shall advise anyone in his/her household that any computer in the household may be subject to computer monitoring.

9. Defendant shall disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office. Defendant shall also, if requested, provide a list of all software/hardware on his/her computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor the defendant's computer usage.

10. Defendant shall provide the probation officer with access to any requested financial information for purposes of monitoring their compliance with the imposed computer access/monitoring conditions, including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

11. Defendant shall have no direct or indirect contact with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the Probation Office. Defendant shall not have any direct or indirect contact with the victim. Should the defendant have incidental contact with a child or the victim, the defendant is required to immediately remove himself from the situation and notify his/her probation officer.

12. Defendant shall consent to third party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon him, unless excused by the probation officer. Defendant shall not be employed in any capacity that may cause the defendant to come in direct contact with children, except under circumstances approved in advance by the supervising probation officer. In addition, the defendant shall not participate in any volunteer activity that may cause the defendant to come into direct contact with children, except under circumstances approved in advance by the defendant's probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via

mail, over the internet, and any third party communication.

13. Prior to accepting any form of employment, the defendant shall seek the approval of the Probation Office, in order to allow the Probation Office the opportunity to assess the level of risk to the community the defendant may pose if employed in a particular capacity.

14. The defendant shall have no contact, direct or otherwise, with Minor A or Minor A's family, and shall be not use the identities or photographs of Minor A or Minor A's family in any way.

(d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so);

(e) restitution as determined by the Court; and

(f) forfeiture as set forth in Paragraph 8.

Within the sentencing range agreed to by the parties, the sentence to be imposed upon Defendant is within the discretion of the Court, subject to the provisions of the advisory USSG and the factors set forth in 18 U.S.C. § 3553(a).

6. <u>Waiver of Right to Appeal and to Bring Future Challenge</u>

(a) Defendant has conferred with his attorney and understands that he has the right to challenge his conviction in the United States Court of Appeals for the First Circuit ("direct appeal"). Defendant also understands that, in some circumstances, Defendant may be able to challenge his conviction in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255 or 28 U.S.C. § 2241. Defendant waives any right to challenge Defendant's conviction on direct appeal or in any future proceeding (collateral or otherwise).

(b) Defendant has conferred with his attorney and understands that defendants ordinarily have a right to challenge in a direct appeal their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) and may sometimes challenge their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) in a future proceeding (collateral or otherwise). The rights that are ordinarily available to a defendant are limited when a defendant enters into a Rule 11(c)(1)(C) agreement. In this case, Defendant waives any rights Defendant may have to challenge the agreed-upon sentence (including any agreement relating to supervised release, fines, forfeiture, and restitution)

on direct appeal and in a future proceeding (collateral or otherwise), such as pursuant to 28 U.S.C. § 2255 and 28 U.S.C. § 2241. Defendant also waives any right Defendant may have under 18 U.S.C. § 3582 to ask the Court to modify the sentence, even if the USSG are later amended in a way that appears favorable to Defendant. Likewise, Defendant agrees not to seek to be resentenced with the benefit of any change to Defendant's Criminal History Category that existed at the time of Defendant's original sentencing. Defendant also agrees not to challenge the sentence in an appeal or future proceeding (collateral or otherwise) even if the Court rejects one or more positions advocated by any party at sentencing. In sum, Defendant understands and agrees that in entering into this Plea Agreement, the parties intend that Defendant will receive the benefits of the Plea Agreement and that the sentence will be final.

(c) The U.S. Attorney agrees that she will not appeal the imposition by the Court of a sentence within the sentencing range agreed to by the parties as set out in Paragraph 5, even if the Court rejects one or more positions advocated by either party at sentencing.

(d) Regardless of the previous subparagraphs, Defendant reserves the right to claim that Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington.*

7. Waiver of Hyde Amendment Claim

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants attorneys' fees and other litigation expenses. In exchange for concessions the U.S. Attorney made in this Plea Agreement, Defendant voluntarily and knowingly waives any claim Defendant might assert under this statute based in whole or in part on the U.S. Attorney's agreement in Paragraph 1 to dismiss Counts One through Six and Count Eight of the Indictment.

8. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offenses, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

The assets to be forfeited specifically include, without limitation, the following:

a. one Sony Vaio Laptop Computer, bearing serial number C6021UER;

b. one Dell Inspiron M5010 Laptop Computer, bearing serial number H8B36N1;

c. one HTC Droid Incredible Cellular Phone, bearing serial number HT26J10727; and

d. one blue, 2008, four-door Dodge Ram Quad Pickup, bearing Massachusetts registration number 69YN86.[1]

Defendant admits that these assets are subject to forfeiture on the grounds that they contain at least one visual depiction described in Section 2251, 2251A, 2252, 2252A, 2252B, or 2260 of Chapter 110 of Title 18, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Chapter 110 of Title 18; constitute or are traceable to gross profits or other proceeds obtained from such offenses; or were used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property. Defendant also admits that these assets are subject to forfeiture on the grounds that they were used or intended to be used to commit or to facilitate the commission of Defendant's offenses; or constitute or were derived from any proceeds obtained, directly or indirectly, as a result of Defendant's offenses. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding. In addition, if the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest, at any time from December 27, 2012 to the present. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the

[1] Defendant asserts that this vehicle has been transferred without his consent to an unknown third party, but nonetheless agrees that he will assist the U.S. Attorney with any forfeiture proceeding related to this vehicle and waives and releases any claims to this vehicle.

U.S. Attorney.

Defendant also agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement. Defendant agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Plea Agreement, and will not assist any third party with regard to such challenge or review.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

9. Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

10. Civil Liability

By entering into this Plea Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Plea Agreement. Defendant agrees to cooperate with employees of the FBI, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of his civil liabilities. Defendant specifically authorizes release by the FBI to the aforementioned agencies and their representatives of information for purposes of making that assessment. Defendant further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure, to permit the disclosure of matters occurring before the grand jury for this purpose.

11. Withdrawal of Plea By Defendant or Rejection of Plea by Court

Should Defendant move to withdraw his guilty plea at any time, or should the Court reject the parties' agreed-upon disposition of the case or any other aspect of this Plea Agreement, this Plea Agreement shall be null and void at the option of the U.S. Attorney. In this event, Defendant agrees to waive any defenses based upon the statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act with respect to any and all charges that could have been timely brought or pursued as of the date of this Plea Agreement.

12. Breach of Plea Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Plea Agreement, has engaged in any of the activities set forth in Paragraph 4(a)-(j), has

violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's execution of this Plea Agreement, the U.S. Attorney may, at her sole option, be released from her commitments under this Plea Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to her under the law, regardless whether she elects to be released from her commitments under this Plea Agreement. Further, the U.S. Attorney may pursue any and all charges which otherwise may have been brought against Defendant and/or have been, or are to be, dismissed pursuant to this Plea Agreement. Defendant recognizes that his breach of any obligation under this Plea Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea, but will give the U.S. Attorney the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements made by Defendant and any information, materials, documents or objects provided by Defendant to the government, without any limitation, regardless of any prior agreements or understandings, written or oral, to the contrary. In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

13. Who Is Bound By Plea Agreement

This Plea Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

14. Complete Agreement

This Plea Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Steven H. Breslow.

Very truly yours,

CARMEN M. ORTIZ
United States Attorney

By: Kevin O'Regan / SHB
Kevin O'Regan
Chief, Springfield Branch Office

[signature]
Steven H. Breslow
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that I received an offer by letter dated January 13, 2014 and rejected that offer. I understand the crimes to which I have agreed to plead guilty, the mandatory minimum and maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Plea Agreement is in my best interest.

Ronald S. Brown
Defendant

Date: 11-2-15

I certify that Ronald S. Brown has read this Plea Agreement and that we have discussed its meaning. I believe he understands the Plea Agreement and is entering into the Plea Agreement freely, voluntarily and knowingly. I also certify that in addition to this offer, the U.S. Attorney extended an offer dated January 13, 2014 and that prior counsel fully discussed that offer with Defendant before Defendant rejected it.

Stylianus Sinnis
Attorney for Defendant

Date: 11-2-15

*United States v. Ronald S. Brown*
Criminal No. 14-30027-MGM

**Attachment To Plea Agreement: Statement of Facts**

*The parties agree that, if this matter had proceeded to trial, the United States would have proven the facts set forth below beyond a reasonable doubt. The parties further agree that the following facts do not encompass all of the facts that would have been proven if this matter proceeded to trial. The parties also agree that the following facts satisfy the necessary elements of the crimes to which Defendant is pleading guilty.*

1. Defendant's Criminal History And Status As A Registered Sex Offender.

On March 24, 1995, in Litchfield, Connecticut, Defendant Ronald S. Brown ("Brown") was sentenced for three crimes in two separate cases (collectively, the "Connecticut Offenses"):

i. Brown was convicted in Litchfield Judicial District Court Docket No. CR94-83667 of one count of sexual assault in the second degree in violation of Conn. Gen. Stat. Section 53a-71 and sentenced to ten years in jail with five years to serve and five years of probation, and of one count of delivering liquor to a minor in violation of Conn. Gen. Stat. Section 30-86 and sentenced to one year in jail (suspended and concurrent) and two years of probation.

ii. Brown was convicted and sentenced in Litchfield Judicial District Court Docket No. CR94-84537 with one count of tampering with a witness and was sentenced to three years in jail (suspended and concurrent).

According to records of the Connecticut Judicial Department, Office of Adult Probation, between August 23 to 26, 1994, Brown had sexually assaulted a twelve year-old minor male at a

campground in North Canaan, Connecticut after providing him liquor. According to the minor's complaint, while the minor was sleeping in their tent, Brown pulled down the minor's shorts and underpants and inserted his finger into the boy's anus and then threatened him by saying "if you tell anyone I'll come get you. I know where you live." In a later incident, Brown threw the boy to the ground and grabbed his penis; according to a subsequent medical examination, the boy had abrasions on his penis and cuts on his shins and hands. Lastly, on approximately December 6, 1994, Brown called the boy and stated "I'm going to kill you, you're a dead motherfucker."

The defendant entered pleas of *nolo contendere* to his offenses of conviction. Based upon these offenses, Brown became a Tier II registered sex offender.

In December 2012, Brown was fifty years old, living in Williamstown, Massachusetts, and remained a registered sex offender.

2. Brown's Contacts With Minor A

In approximately late December 2012, Brown met a sixteen year-old minor male ("Minor A") through a website called Silverdaddies.com, which older men use to meet substantially younger men or boys for sexual and/or romantic relationships. Minor A's profile stated he was 18 years old, but in an online chat on December 27, 2012, Minor A informed Brown that he was only 16 years old. Minor A also informed Brown that his father had abandoned their family, his mother had rejected him because he was gay, he had been despondent because people had used him for sex, and he had recently been hospitalized for suicidal ideations.

From December 27, 2012 through January 19, 2013, Brown engaged Minor A in thousands of contacts, including website communications, instant messages, internet chats, e-mails, live webcam transmissions, telephone calls, and online video game interactions. For

example, on January 1, 2013, Brown stated in a message to Minor A's silverdaddies account that "Mr. [Minor A] is the most amazing, incredible awesome sweet smart, cute, cuddly, sexy, blazing hot, person of all time and I want him to be mine... forever plus 4 infinities."

Throughout Brown's thousands of contacts with Minor A, Brown never informed Minor A that he had been previously convicted of the Connecticut Offenses and was a registered sex offender.

By January 1, 2013, Brown and Minor A had developed an intense and graphically sexual online relationship. Throughout this relationship, Brown praised Minor A, assured Minor A that he would be loyal and loving, and repeatedly urged Minor A to come live with him in Massachusetts. During their communications, Brown and Minor A frequently discussed having sexual contact at the earliest opportunity, including in Brown's truck on the way back to Massachusetts.

According to Minor A and Brown's online chats, Brown expressed an interest in "water sports," a fetish in which one sexual partner urinates on the other. For example, on January 3, 2013, Brown initiated a Yahoo Instant Messenger chat concerning his bathroom fetish:

> 12:31:50 AM Ron Brown: hey, seeing you sitting and pooping is a memory I want
>
> 12:32:22 AM Minor A: really?
>
> 12:33:01 AM Ron Brown: yup, because peeing and pooping are so personal like jerking off to, it's not something most share with others, well, maybe JO [jack off, i.e. masturbation], but certainly not being comfy with someone in the room when you poop,
>
> 12:33:46 AM Minor A: i see, never saw that as a memorable moment
>
> 12:34:21 AM Ron Brown: trust me, I want to see and know

> everything, every face you make sound you make even when pooping, LOL Besides I have to know how you wipe yourself in case you ever break both arms at the same time

On or about January 3, 2013, Brown sent Minor A photographs depicting Brown naked, including one photograph depicting Brown's penis urinating. At some point in early January (most likely on or about January 3, 2013), Minor A masturbated for Brown through a Skype video chat. In a recorded, post-*Miranda* interview with law enforcement on January 20, 2013, *see infra* ¶ 3, Brown agreed with the agents' assertions that Brown had asked Minor A masturbate to him on Skype and had "Skype sex with this kid, masturbation, a lot of sexually explicit contact via chat rooms or whatever."

By January 7, 2013, Brown had succeeded in persuading Minor A to run away from home. According to records of Southwest Airlines and Brown's local bank, Mountain One Bank, on January 7, 2013, Brown (listing his Williamstown address address) booked and purchased a one-way flight for Minor A's travel from his Midwestern home state to Newark International Airport in New Jersey on January 19, 2013.

At some point in early January (most likely on or about January 8, 2013), Minor A informed Brown that he was about to get in the shower, and Brown asked Minor A, in sum and substance, "Can I see?" In response, Minor A took a photograph of himself nude and displaying his penis, and sent it through a text message to Brown. Brown responded with a text message that said, in sum and substance, "That's hot . . . join you anytime." In a recorded post-*Miranda* interview on January 20, 2013, *see infra* ¶ 3, Brown admitted that a few weeks earlier, Brown received (but did not request) from a nude photo of Minor A, which Brown then e-mailed the nude photo of Minor A from his cell phone to his laptop, where he stored it in a folder entitled

with Minor A's initials.

On January 12, 2013, Brown sent Minor A an e-mail entitled "'To do' list – URGENT," listing 13 items, including:

> 1. Call taxi company, find out roughly what it's going to cost from your 'neighborhood', [give a cross street, don't have them pick up right at your house...
> ***
> 4. Before you leave, and it might take a little while, wipe your profile off the laptop, please."
> ***
> 9. Start bringing home, Friday at the latest, ALL your 'personal stuff' from your locker and school.

Later on January 12, 2013, Brown sent the following text message to Minor A on Facebook: "the big difference is that unlike your Dad and other father figures, I won't EVER leave you and you can't get rid of me either... and you are exactly right, but more than that, sex is one thing, whether it's anal or just kissing and cuddling, we will be 'making love', though I have a feeling that at times, it's going to be down and dirty 'fucking'."

On January 19, 2013, Minor A ran away from home and flew from his Midwestern home state to Newark on a one-way flight purchased by Brown. That same day, Brown drove in his truck, a blue, 2008, four-door Dodge Ram Quad Pickup with MA license plate No. 69YN86, from Massachusetts to Newark, picked up Minor A at the airport, and began driving him back through New York State toward Massachusetts. During the drive and while in New York State, Brown stroked Minor A's naked penis and groped his naked buttocks, in violation of New York State Penal Law Section 130.55, which prohibits sexual conduct between a person under 17 years old and a person more than five years older.

According to Minor A, in addition to the Skype masturbation session, Minor A frequently

brought his laptop into the bathroom so that Brown could observe him urinate and defecate. On January 18, 2013, during a Skype video chat, Minor A displayed his penis to Brown while urinating. According to the Skype chat log for this episode, Brown first wrote "can't see," then "sweet," then "that is so big and beautiful... would you call that method of peeing a 'hands free device LOL,'" and finally, "I can't belive [sic] that I'll be seeing that and ALL of you in 15 1/2 hours... and holding it if you let me when you pee."

3. <u>Brown's Interviews With Law Enforcement And The Searches Of His Computer Media</u>

On January 19, 2013, Minor A's mother discovered Minor A's Skype chats and alerted federal and state officials, who recovered Minor A from Brown on the New York State Thruway. Around midnight, Brown (who was not arrested) waived his *Miranda* rights and consented to a video-recorded interview at the Williamstown Police Department ("WPD") with a member of the FBI. During this interview, Brown made numerous admissions, including: meeting Minor A online; communicating with Minor A through texting, talking, Facebook, and Skype; purchasing Minor A's plane ticket with his debit card; and receiving a nude photo of Minor A, e-mailing the photo to himself, and storing it on his laptop. However, Brown also falsely insisted that he did not know Minor A was 16 years old until the police informed him. During this interview, Brown also voluntarily consented for the agents to search his Sony VAIO laptop and an HTC Incredible cellular telephone with serial number serial number HT26J310727 (the "HTC Cell Phone").

A few hours later, on January 20, 2013, after the agents had accessed Minor A's online accounts, agents conducted an audio-recorded, follow-up interview with Brown. When the agents confronted Brown with the December 27, 2012 chat in which Minor A informed Brown

that he was only 16 years old, Brown admitted lying in his first interview. When the agents asserted that Brown had asked Minor A to masturbate on Skype and had "Skype sex with this kid, masturbation, a lot of sexually explicit contact via chat rooms or whatever," Brown agreed. Brown also stated that the "main goal" of the trip was "[t]o get him here" and "part of it" was to know Minor A sexually.

On February 1, 2013, agents executed a federal search warrant for Brown's Sony VAIO laptop with serial number serial number C6021UER (the "Sony VAIO laptop"), his cell phone, and his residence, in which they found a Dell Inspiron M5010 laptop with serial number H8B36N1 (the "Dell Inspiron laptop"). Consistent with Brown's admissions in the first interview, the agents located Minor A's nude photograph, which was forensically dated January 8, 2013, in the Sony VAIO laptop in a folder with Minor A's initials, as well as in the Dell Inspiron laptop.

---