# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **DOCKET NO.: 14-CR-30027-MGM** |
| | ) | |
| **RONALD BROWN** | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Over the course of a four week period, Mr. Brown communicated with a young man who was 2 months shy of his 17th birthday.  The two met on a website called "Silver Daddies.com."  The minor had created a profile that stated he was 18 years old, but shortly after exchanging e-mails and texts with Mr. Brown he told him he was 16 years old.  The two engaged in sexually explicit "chats" and "skype" sessions, both of which were initiated by the minor.  On one occasion the minor sent Mr. Brown a naked picture.  On January 19, 2013, the minor traveled from his home in Oklahoma to Newark Airport, New Jersey to meet Mr. Brown.  Mr. Brown paid for the airline ticket.  As the two were driving from New Jersey to Massachusetts the police called Mr. Brown.  At the request of the officer on the telephone, Mr. Brown immediately pulled his car over, told the officer exactly where he was located, and waited for the police to arrive.  The police arrived and took custody of the minor and allowed Mr. Brown to continue on his way to Williamstown, Massachusetts.  Ultimately, the minor returned to Oklahoma and some ten days later the police arrested Mr. Brown.

Mr. Brown pled guilty to Interstate Travel for the Purpose of Engaging in Illicit Sexual conduct with a Minor in violation of 18 U.S.C. § 2423(b) and Possession of Material Involving the Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2252(b)(2).  Mr. Brown pled guilty pursuant to a plea agreement entered into under Rule 11(c)(1)(C) with an agreed upon sentencing

1

range of 14 – 16 years.  The probation department has calculated Mr. Brown's sentencing

guidelines to be 168 – 210 months.  Should the Court accept Mr. Brown's plea pursuant to Rule

11(c)(1)(C), the guidelines would effectively become 168 – 192 months.

For the reasons detailed below, Ronald Brown requests that the Court sentence him to the

low end of the applicable sentencing guidelines range – 168 months.  Mr. Brown also submits under

seal a report by Carol Ball, Ph.D., regarding a psychological and sexual evaluation of Mr. Brown.

A sentence of 168 months reflects the nature and circumstances of Mr. Brown's offense and

his history and characteristics, and, most importantly, is "sufficient but not greater than necessary"

to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a).

## ARGUMENT

Following *United States v. Booker,* 543 U.S.220, 259 (2005) a sentencing court must begin

by considering the Guidelines. But, the Guidelines are not the sole, nor even the first among the

factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not

presume that the Guidelines range is reasonable" and must "make an individualized assessment

based on the facts presented." *Id.* at 596-7. Indeed, "the Guidelines are only one of the factors to

consider . . . and 3553(a) directs the judge to consider sentences other than imprisonment." *Id.* at

602 (emphasis added). The Supreme Court later emphasized again that the "Guidelines are not only

underline mandatory on sentencing courts; they are also not to be underline presumed reasonable." *Nelson v. United

States*, 129 S.Ct. 890, 892 (2009) (emphasis in original).

Thus, district courts are now permitted, indeed, directed to consider whether the Sentencing

Commission's underlying policy results in a sentence that is unreasonably high. *See United States v.

Kimbrough*, 128 S.Ct. 558, 575 (2007); *United States v. Boardman*, 528 F.3d 86 (1st Cir. 2008);

*United States v. Martin*, 520 F.3d 87, 93-94 (1st Cir. 1998).

The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In *Rodriguez*, the First Circuit stressed that the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *Id*. at 228. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is <u>minimally sufficient</u> to achieve the broad goals of sentencing." *Id.* (emphasis added).

Here, the parties and the Probation Department agree the guidelines are 168 – 210 months; however, under the terms of the plea agreement entered into under Rule 11(c)(1)(C), the guidelines would effectively become 168 – 192.

1.    **Nature and Circumstances of the Offense**

Mr. Brown acknowledges the seriousness of the nature of the offense and does not seek to minimize that his actions were criminal and harmful.  However, the circumstances surrounding the instant offense are, to say the least, anomalous. The vast majority of enticement or interstate travel cases involve offenders who lie about their age and actively troll internet sites intended for minors. This case stands in stark contrast to the majority of cases, and while the circumstances do not bear on the criminality of Mr. Brown's behavior, they are relevant to determining the appropriate sentence to impose.

Here, in November 2012, the minor involved in this case created a profile on a website called silverdaddies.com. His profile stated that he was 18 years old.  In reality, he was roughly 2 months shy of his 17th birthday. Following Mr. Brown's arrest, the minor told law enforcement that

he went to silverdaddies because he was "sexually interested in older men."  He also stated that he

had a previous relationship with a man who was fifty-three whom he had met through

silverdaddies.[1] Beginning on December 23, 2012 the minor and Mr. Brown started having chats

through the website.  Within a few days after these chats began, the minor informed Mr. Brown that

he was sixteen years old. Over the course of the next 3 weeks, Mr. Brown and the minor engaged in

numerous communications through skype, e-mail, text, telephone calls and other forms of

communication.  During the course of this communication, the minor sent Mr. Brown a nude

photograph of himself.

On January 19, 2013 the minor boarded a plane in Oklahoma and flew to Newark Airport in

New Jersey. Mr. Brown paid for the airplane ticket and picked him up at the airport. The two began

driving towards Mr. Brown's home in Williamstown, Massachusetts.  Based on a note the minor

left his mother, she realized that he had traveled to meet Mr. Brown and contacted law enforcement

---

[1] While Mr. Brown disavows any interest and desire in ever again engaging in relationships with men of the minor's age, and acknowledges that his interactions with the minor at issue in this case was wrong, it is important to note that the relationship was with a willing young person, who invited or initiated sexual contact. It has been documented that engaging in so-called age-discrepant relationships is not uncommon among gay men, and a body of growing empirical literature has demonstrated that age-discrepant sexual encounters are not necessarily traumatic and do not necessarily result in lasting psychological harm to the willing victims. *See* Bruce Rind, *Gay and Bisexual Adolescent Boys' Sexual Experiences With Men: An Empirical Examination of Psychological Correlates in a Nonclinical Sample*, Archives of Sexual Behavior, 345 (2001).

Some researchers theorize that one reason this is so may have to do with the fact heterosexual and homosexual age-discrepant relationships are informed by different dynamics. Jessica Stanley, et al., *Gay and Bisexual Men's Age-Discrepant Childhood Sexual Experiences*, Journal of Sex Research, 380 (2004) (finding "the development of young men's sexuality differs from that of heterosexual men, given the lack of social support for their orientation and the lesser availability of same-age sexual partners.").

The issue of attraction to pubescent adolescents (also known as hebephilia) was litigated extensively in the civil commitment context and those cases are illustrative on the issue of whether such an attraction is abnormal. *See United States v. Shields*, 07-12056-PBS, Dkt. No. 98, available at 2008 WL 544940 (D. Mass. February 26, 2008)("[w]hile [the] literature may establish that hebephiliac is generally accepted in the field as a group identifier or label, it does not establish that hebephiliac is generally accepted as a mental disorder by professionals who assess sexually violent offenders."); *United States v. Abregana,* 574 F.Supp. 2d 1145(D. Hawaii 2008)(finding that hebephilia based on consensual sexual encounters with minors not to be a "serious" mental disorder for the purposes of civil commitment).

and her son, the minor. After the minor spoke with his mother, Mr. Brown called the Williamstown Police Department.  He informed the police that he was at mile marker 81 on the New York Thruway.  The police instructed him, by telephone, to pull over to the side of the road and wait for New York police to arrive.  Mr. Brown did as he was told. New York State police arrived at the scene and the minor left with the police and Mr. Brown was told he was free to leave. Following further investigation, Mr. Brown was arrested on February 1, 2013.  He has remained in federal custody since that date.

> **2.** **History and Characteristics of Mr. Brown**

Now 53 years old, Ronald Brown, was born in Philadelphia and put up for adoption at the time of his birth.  Adopted by Morton and Harriet Grodner, Mr. Brown's childhood was marked by abuse, a lack of stability, and an unstable environment. The family moved from New York City to Rochester, New York when Mr. Brown was four years old, and following his adopted parents separation, his mother took him to Williamstown, MA.  Harriet Grodner became involved with Kenneth Brown and ultimately they got married and Ron and his adoptive sister took the name Brown.

Kenneth Brown had a checkered history and he and Mr. Brown fought often.  The family home was a place of little joy: Ms. Brown was disabled and required much attention; Kenneth Brown worked sporadically and left the boy scouts under a cloud of suspicion; Ron argued and fought constantly with his new father; and his adopted sister left the home when she was a teenager.

Mr. Brown graduated from high school in 1980 and attended Westfield State College. Unfortunately, he dropped out of college after his junior year as he found that he did not fit in and felt ostracized.  Sadly, this is a feeling that Mr. Brown had for the majority of his youth and young adulthood. Growing up gay in the 1970s was difficult and Mr. Brown continually found himself

feeling "different" then his peers and finding it difficult to discuss his sexuality with his friends and family.

Mr. Brown has four prior convictions, two of which resulted from the same course of conduct and that present the most serious prior behavior.  Specifically, in 1994 Mr. Brown was convicted of sexual assault and tampering with a witness in relation to sexual assault charge. The facts underlying that case involved Mr. Brown taking a 12 year old boy on a camping trip during which he fondled the minor's penis. Mr. Brown served five years in prison for that offense and an additional one year after violating the terms of his probation. The conduct at issue in the 1994 is far more serious then that involved in the instant case and that conviction dramatically alters Mr. Brown's federal sentencing guidelines.[2] Thus, the 1994 conviction already plays a dramatic role in Mr. Brown's ultimate sentence as reflected in the sentencing guideline range of 168 – 192 months.

**3.      Punishment, Deterrence and Recidivism**

Counsel submits that the most relevant section 3553(a) factors at issue in this case are just punishment, deterrence, and recidivism.  *See* 18 U.S.C. 3553(a)(2)(A)(B)& (C).

**a.      Just Punishment**

First, fourteen years is a substantial amount of time in light of the specific facts of this case. Should the Court impose a fourteen year sentence, Mr. Brown will be roughly 63 years old when released from federal custody.  Following his release, he will be on federal supervision for ten years

---

[2] The 1994 conviction causes Mr. Brown's sentencing guidelines to be calculated under U.S.S.G. §4B1.5 rather than U.S.S.G.§2G1.3.  *See* U.S.S.G §4B1.5(a) and Presentence Report ¶ 32.  Under Section 2G1.3 Mr. Brown's Total Offense Level after acceptance would be 27. PSR ¶ 40. However, based on his 1994 conviction, Mr. Brown's guidelines are calculated under U.S.S.G. §4B1.5 and result in a Total Offense Level of 31.  PSR ¶ 44.  In addition, Mr. Brown's criminal history category is raised from IV to V based on Section 4B1.5.  PSR ¶¶ 54, 55.  Accordingly, but for the cross reference to section 4B1.5, which is triggered by the 1994 conviction, Mr. Brown's sentencing guidelines range would be 100 – 125 as opposed to 168 – 210.

Notably, Section 4B1.5 was written "in response to the Protection of Children from Sexual Predators Act of 1998, Pub. L. 105-314," *see* Amendment 615, Appendix C., vol. II, pp. 125 - 126, thus, it was created in response to a Congressional directive, not as the result of any reasoned decision by the Sentencing Commission.

– until he is 73 years old.  While on supervision he will be required to comply with a long list of extremely restrictive special conditions and he will be required to register as a sex offender for the remainder of his life.  Clearly, fourteen years is sufficient punishment.  Moreover, it is hard to articulate how an additional two years in prison would satisfy the overarching goal of federal sentencing; namely, to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in section 3553(a).

        **b.**        **Adequate Deterrence**

It cannot be seriously argued that the situation Mr. Brown finds himself in as a result of his conduct is insufficient to deter others from engaging in this type of conduct. Brown's behavior has subjected him to public opprobrium over his conduct in the rural community in which he has spent decades and will remain for the rest of his life. In Mr. Brown's case he will not only serve at least 14 years in prison, but as a convicted sex-offender he will be monitored and registered, and his name will be continually subject to disclosure to the community as such. Such conditions and consequences that necessarily include public shame in the close community in which Mr. Brown lives carry a high deterrent value. Moreover, a sentence of 14 years in federal prison sends a clear, strong signal that the Government will swiftly hold individuals accountable for this type of criminal conduct.

        **c.**        **Public Protection and Recidivism**

Mr. Brown was evaluated by Carol J. Ball, Ph.D., of New England Forensic Associates, an experienced practitioner in the area of sex offender evaluation and treatment. Dr. Ball's report is being filed under seal.  Dr. Ball administered a battery of psychological tests including the Abel Assessment of Sexual Interest and the Static-99R, which evaluates risk of reoffending. It is generally accepted in the sex offender field that validated actuarial risk assessment instruments

provide a more accurate and reliable assessment of a sex offender's likelihood of reoffending than even the best and most experienced clinical judgments. *See United States v. Shields,* 2008 WL 544940 *1 (D. Mass. Feb. 26, 2008)(finding that actuarial risk assessments are reliable under *Daubert,* in part because they "are generally accepted as a reliable methodology within the relevant scientific community and they have been subject to peer review"). The rates of recidivism associated with the Static-99R are what experience and research have established as the rates at which all male sex offenders with particular scores will recidivate over different periods of time.

Here, Dr. Ball concludes that Mr. Brown receives a score of 2 on the Static-99R. This equates with a 5 year sexual recidivism rate of only 5.6%. That means if Mr. Brown were released today there would be less than a 6% chance he would re-offend within 5 years. This is a very low probability of re-offense.

This rate is further reduced when Mr. Brown's age at the time of his release is factored into the analysis. The research shows that age is a primary determinant of recidivism risk in sex offenders. *See* Howard Barbaree & Ray Blanchard, <u>Sexual Deviance over the Lifespan: Reductions in Deviant Sexual Behavior in the Aging Sex Offender</u>, Sexual Deviance, Theory, Assessment & Treatment 37 (Richard Laws & William T. O'Donohue eds.,2d ed. 2008); Robert Prentky & Austin Lee, Effect of Age-at-Release on Long Term Sexual Re-offense Rates in Civilly Committed Sexual Offenders, 19 Sex Abuse 43-59 (2007).

Should the Court sentence Mr. Brown to 14 years, he will be 63 years old at the time of his release. Dr. Ball concludes that based on the results of the Static-99R combined with the scientific research of aging sex offenders that "if [Mr. Brown] serves the minimum sentence in his plea agreement, his risk would be close to zero." Ball Report, page 12. She goes on to state that "community safety is not enhanced by Mr. Brown's extended incarceration." *Id.*

Quite simply a sentence of 14 years is more than sufficient to ensure the safety of the public and sufficient to address this goal of section 3553(a).

## **CONCLUSION**

For the foregoing reasons, a sentence of 14 years is sufficient but not greater than necessary to effect the goals of 18 U.S.C. § 3553(a).


RONALD BROWN
By His Attorney

*/s/ Stylianus Sinnis*
Stylianus Sinnis
BBO # 560148
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## **CERTIFICATE OF SERVICE**

I, Stylianus Sinnis, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 11, 2016.


*/s/ Stylianus Sinnis*
Stylianus Sinnis